In re: CONDEMNATION OF LANDS, EASEMENTS AND RIGHTS–OF–WAY IN WEST PENNSBORO TOWNSHIP, CUMBERLAND COUNTY, PENNSYLVANIA, BY THE BIG SPRING SCHOOL DISTRICT FOR THE DEVELOPMENT, CONSTRUCTION, OPERATION AND MAINTENANCE OF PUBLIC SCHOOL FACILITIES.

Kenneth E. ROCKEY

v.

BIG SPRING SCHOOL DISTRICT, Appellant.

Commonwealth Court of Pennsylvania.

Argued April 9, 1997.
Decided Aug. 5, 1997.

13. *Seagram Distillers,* 379 Pa. at 417, 109 A.2d at 188 (1954).

Richard C. Snelbaker, Mechanicsburg, for appellant.

Gary E. Hartman, Gettysburg, for appellee.

Before COLINS, President Judge, and McGINLEY, SMITH, PELLEGRINI, FRIEDMAN, KELLEY and LEADBETTER, JJ.

LEADBETTER, Judge.

Big Spring School District (School District) appeals from an order of the Court of Common Pleas of Cumberland County (trial court) denying the School District's petition to effect settlement of just compensation in an eminent domain proceeding.

On July 17, 1990, the School District filed a declaration of taking, thereby initiating condemnation proceedings regarding 17.411 acres of unimproved land owned by Kenneth E. Rockey (Rockey) in West Pennsboro Township, Cumberland County. On September 27, 1990, the School District tendered payment to Rockey of estimated just compensation in the amount of $51,000. Subsequently, the School District built an elementary school on the property. On February 21, 1995, over four and a half years after the taking, upon petition of the School District, a

Board of View was appointed to ascertain just compensation.

Before the Board of View held the requisite hearings and filed its report, Edward L. Schorpp, Esquire, counsel for Rockey,[1] and Richard C. Snelbaker, Esquire, counsel for the School District, entered into written settlement negotiations. On June 7, 1995, Snelbaker wrote to Schorpp:

[T]he Board of School Directors of the Big Spring School District has authorized me to make this last and final offer to settle the matter: the District will pay your client the total sum of $1,500 in full settlement of all matters arising from the eminent domain proceeding ... provided that written acceptance of this proposal is received at our office by the close of business on Friday, June 16, 1995.

(R.R. at 120a.) On June 12, Schorpp responded:

Mr. Rockey has reluctantly agreed to resolve the outstanding issues by accepting the settlement set forth in your letter of June 7, 1995. I suspect that you will want a release from my client. Please forward that document and a check, and I will conclude matters to this end.

(R.R. at 121a.) On June 21, 1995, Snelbaker stated the following in a letter to Schorpp:

Based upon your letter of June 12, 1995, it appears that we have reached a settlement of the above matter subject to the District's appropriation of the balance of the settlement funds ($1,500). Unfortunately, the Board does not meet in public session until July 17, 1995 at which time the authorization will be on the agenda.

In the meantime and in anticipation of a favorable vote by the Board, I have prepared and enclose herewith three counterparts of a Release of Condemnee, two of which I request be signed by Mr. Rockey, witnessed by you personally, acknowledged and delivered to me in return for the check for $1,500.00 when available. I am sending

---

1. Schorpp entered an appearance on behalf of Rockey on March 30, 1990. Prior to Schorpp's appearance, Rockey had been represented by another attorney.

this on to you so that you can obtain Mr. Rockey's signature and acknowledgment in preparation for an exchange of Releases and check.

(R.R. at 122a.)

On August 30, 1995, Snelbaker again wrote to Schorpp:

On June 21, 1995, I forwarded a form of Release of Condemnee to you. The Board took appropriate action on July 17, 1995, to authorize the payment of $1,500.

On July 19, 1995, I initiated a telephone call to you to make arrangements to deliver the check and receive the release. At that point, you advised that Mr. Rockey had not signed the release but you expected to be seeing him in the immediate future.

. . . .

... We construe the combination of enclosed letters as the formation of an express contract of settlement. If Mr. Rockey does not proceed voluntarily to resolve this matter per his agreement within 10 days from the date of this letter, we will initiate appropriate proceedings to enforce the agreement.

(R.R. at 126a.) Shortly thereafter, on September 14, 1995, Schorpp filed a petition to withdraw as counsel, and since has withdrawn.

Consequently, on September 19, 1995, the School District filed a petition to enforce the settlement of just compensation.[2] After entering an appearance on October 6, 1995, Rockey's current attorney filed an answer and new matter in response to the School District's petition, maintaining that the mat-

ter should proceed before the Board of View since Rockey never signed the release. The School District answered the new matter, and a hearing was held on December 6, 1995.

■ After the hearing, the trial court issued an opinion in which it noted that while an attorney has implied authority to make agreements and stipulations concerning purely procedural matters, an attorney has no such authority to enter into agreements which involve a waiver of his or her client's substantial rights or which impose upon the client new liabilities or burdens. Therefore, the trial court reasoned that since Rockey's right to receive just compensation for the condemnation of his land was substantial, Schorpp's letter of June 12, 1995, was insufficient, without Rockey's signing the release, to bind Rockey to the settlement agreement. Accordingly, the trial court denied the School District's petition to effect settlement of just compensation. This appeal followed.[3]

■ While the trial court correctly stated that an attorney has no implied authority to enter into agreements which involve a waiver of his or her client's substantial rights, *Kallen v. Pollock*, 412 Pa. 281, 286, 194 A.2d 227, 229 (1963), the trial court erred in applying this principle to the instant case. Here, Rockey's attorney neither settled the case for his client nor took it upon himself to waive any of his client's rights. Assuming the truth of the representations made in the letters exchanged by counsel, a binding agreement to settle was entered into by the *parties* on or before June 12, 1995. The attorneys did no more than communicate their *clients'* respective positions to opposing counsel, as they are inherently authorized to do.[4] Therefore, the sole issue was whether

2. Section 501 of the Eminent Domain Code, Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S § 1–501, permits a condemnor and a condemnee to agree upon all, or any part, of the damages resulting from a condemnation of land.

3. Our scope of review on appeal is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Redevelopment Authority of the County of Washing-*

*ton v. Sepesy,* 107 Pa.Cmwlth. 227, 528 A.2d 287 (1987).

4. *See, e.g.,* Pennsylvania Rules of Professional Conduct, Preamble: A Lawyer's Responsibilities (1996) ("As advocate, a lawyer zealously asserts the clients position ..."); *see also* Pennsylvania Rules of Professional Conduct 4.2, prohibiting direct communications between a represented party and opposing counsel; *Singer v. Workmen's Compensation Appeal Bd. (Fruehauf),* 90 Pa.

Rockey did in fact accept the agreement.[5]

■ In support of its petition to enforce the settlement agreement, the School District satisfied its burden by introducing the above-quoted letters into evidence. Rockey, who by this time was represented by new counsel, did not object to their introduction nor did he contest the truth of the statements contained in the letters, *i.e.,* that the School District had made an offer which Rockey had accepted. The trial court did not discredit the letters, but instead seems to have simply ignored their plain import as evidence of the parties' conduct, and viewed their significance only in the context of whether an attorney's letter may bind his client to a waiver of substantive rights. However, since the letters contained uncontroverted evidence that the School District and Rockey had themselves agreed to the material terms, the trial court should have enforced the settlement.

■ Moreover, even if analyzed as an "authority" issue, the court below erred. Settlement agreements are highly favored. *Muhammad v. Strassburger,* 526 Pa. 541, 546–52, 587 A.2d 1346, 1348–51 (1991). There is a presumption that a settlement entered into by an attorney has been authorized by the client, although rebuttal of the presumption will render the purported settlement ineffective. *See generally* Annotation, *Authority of Attorney to Compromise Action,* 30 A.L.R.2d 944 (1953); *Garabedian v. Allstates Engineering Co.,* 811 F.2d 802, 803 (3d Cir.1987).

This presumption is fundamental to the effective functioning of our adversary system which is grounded, in part, upon two interrelated understandings: (1) that attorneys speak for their clients, both to the court and to opposing counsel, and (2) that attorney-client communications are privileged. Being able to rely upon counsels' representations of their clients' positions serves the salutary purpose of avoiding intrusion into the attorney-client relationship. Of course, there will be occasional situations where an attorney, by mistake or otherwise, will misrepresent a client's position. This can easily be determined and addressed by a fact-finding exercise, *once the client has come forward to deny the attorney's representations.* Otherwise, no inquiry into the conversations or understandings between clients and their counsel is warranted. Clearly, any diminution of the presumption that the attorney speaks for the client would have a tendency to prompt such intrusion as a matter of course to "verify" uncontroverted statements before they are relied upon.

■ Thus, in the instant case, even if counsel's letter had not clearly evidenced Rockey's personal agreement to the School District's offer, counsel's acceptance should have been presumed authorized, unless authority was controverted by Rockey. Rockey failed both in his answer to the petition to enforce and at the evidentiary hearing to go forward with factual averments,[6] evidence or even a conclusory denial to rebut such a presumption.

Cmwlth.441, 496 A.2d 67, 69 (1985) (attorneys have authority to enter into stipulations of fact on behalf of their clients).

5. While this question has sometimes been characterized as whether the client "authorized" his attorney to accept the offer, under circumstances like those presented here, the court must address the same fact-based inquiry: Did the *client agree to accept the terms* proposed by his adversary? *See, e.g., Smith v. Delaware Valley Auto Spring Co.,* 642 F.Supp. 1112 (E.D.Pa.1986).

6. In fact, Rockey's answer to the School District's petition to enforce contained judicial admissions that a settlement had been reached. In paragraphs 7 and 13 of its petition, the Board averred:

7. Negotiations as to just compensation occurred between the parties, *culminating in an agreement* consisting of an exchange of correspondence between the parties' attorneys, as follows:

a. A letter offer from Condemnor's attorneys dated June 7, 1995, a copy of which is attached hereto marked "Exhibit F".

b. A letter of acceptance from Condemnee's attorneys dated June 12, 1995, a copy of which is attached hereto marked "Exhibit G".

13. Based upon the foregoing history of this matter, it is believed that Condemnee is not honoring and *will not honor the agreement concluded as aforesaid.*

Accordingly, we reverse, and remand to the trial court with instructions to enforce the settlement agreement.

### ORDER

AND NOW, this 5th day of August, 1997, the order of the Court of Common Pleas of Cumberland County in the above-captioned matter is hereby reversed, and the case is remanded to the trial court with instructions to enforce the settlement agreement.

Jurisdiction relinquished.

FRIEDMAN, Judge, dissenting.

I agree with the Majority that Rockey, in his answer to paragraph seven of the School District's petition,[1] admitted that the parties' *attorneys* had, in fact, reached an agreement with respect to the damages resulting from the condemnation of his land. However, the issue before us on appeal is not merely whether such an agreement was made, but whether Schorpp, the attorney who made the agreement, had the power and authority to do so. Because I believe that the Majority has incorrectly concluded that Schorpp had such authority, I must respectfully dissent.

(R.R. at 65a–67a.) (emphasis added). In his answer, verified by Rockey himself, Rockey unequivocally admitted both paragraphs.

Even more blatantly, in paragraph 17 of New Matter, Rockey elaborated:

Condemnee/Plaintiff neither admits nor denies that he had accepted a certain sum as just compensation. The exchange of correspondence speaks for itself. Condemnee/Plaintiff *has never signed a document which agrees to* relinquishment of his rights in real estate or agrees to a specific amount of just compensation, and he is free to now assert his request for a hearing before the Board of View.

(R.R. at 59a–60a.) These admissions make it clear that Rockey had agreed to the School District's offer, but was relying on his later refusal to sign the release in order to avoid enforcement of the settlement agreement. However, it is irrelevant that Rockey subsequently refused to sign a release since neither the offer of June 7 nor Rockey's acceptance of that offer conveyed in the letter of June 12 was conditioned upon the signing of a release or any other documentation by Rockey. The subject of a release was first mentioned by Rockey's counsel in the June 12 letter as an accommodation to the District.

Although it is true that Pennsylvania law has, historically, favored settlement agreements, *see Gross v. Penn Mutual Life Insurance Co.,* 396 F.Supp. 373 (E.D.Pa.1975), an attorney has no *implied* authority to enter into agreements which involve a waiver of his or her client's substantial rights or which impose new liabilities or burdens. *Kallen v. Pollock,* 412 Pa. 281, 194 A.2d 227 (1963). Thus, the party alleging a compromise or settlement agreement has the burden of pleading and proving both the existence of the agreement and the *actual* authority of the attorney to enter into it. *See Redevelopment Authority of the City of Philadelphia v. L & A Creative Art Studio, Inc.,* 6 Pa. Cmwlth. 326, 294 A.2d 606 (1972). Although Rockey's admission that there had been an offer and acceptance of settlement relieved the School District of its burden of pleading and proving the existence of the agreement, it did not relieve the School District of its obligation to plead and prove that Schorpp had the actual authority to accept the School District's offer on Rockey's behalf.[2]

With respect to the School District's obligation, the Majority contends that "[t]here is a presumption that a settlement entered into by an attorney has been authorized by the

1. Paragraph seven of the School District's petition to effect settlement reads as follows:

   7. Negotiations as to just compensation occurred between the parties, culminating in an agreement consisting of an exchange of correspondence between the parties' attorneys, as follows:

   a. A letter offer from Condemnor's attorneys dated June 7, 1995....

   b. A letter of acceptance from Condemnee's attorneys dated June 12, 1995....

   (R.R. at 24a–25a.)

2. *The Majority initially contends that, because the letters exchanged between the parties' attorneys contain uncontroverted evidence that the School District and Rockey had themselves agreed to the material terms of the agreement, the School District satisfied its burden by introducing those letters into evidence.* Inasmuch as the trial court, as the sole trier of fact, assigned very little evidentiary weight to these letters, I disagree that the letters alone can sustain the School District's burden of proof, and join with the dissenting opinion of President Judge Colins.

client...." (Majority op. at 1334.) The Majority explains that, because such a presumption avoids intrusion into privileged communications between attorney and client, it is fundamental to the effective functioning of our adversary system. Although the Majority's rationale may sound persuasive, I believe that a presumption of authority improperly shifts the burden of proof from the party alleging an agreement to the party opposing it. Accordingly, unlike the Majority, I believe that the burden here properly belongs to, and should remain with, the School District.

The School District contends that, by admitting that "[n]egotiations ... occurred between the parties, culminating in an agreement consisting of an exchange of correspondence between the parties' attorneys," (School District's petition, para. 7), Rockey *implicitly* admitted that Schorpp was authorized to settle the matter on Rockey's behalf. Alternatively, the School District contends that Schorpp's letter of June 12, 1995, by stating that "Mr. Rockey has reluctantly agreed ...," (R.R. at 121a), clearly evidences Schorpp's *actual* authority to settle this matter on his client's behalf. The School District maintains that "[t]his is a clear statement which carried the obvious *implications* that ... Schorpp had communicated the District's offer of June 7, 1995 to Rockey and that he 'agreed' to it." (School District's brief at 16)(emphasis added). Thus, because "[t]he transmittal of Rockey's agreement by ... Schorpp contains no *hint* that counsel was less than fully authorized to consummate the terms of the School District's proposal," the School District concludes that Schorpp did, in fact, have Rockey's actual authority to settle this matter.[3] *Id.* I must disagree on several counts.

First, I do not believe that Rockey's admission that Schorpp and Snelbaker had, in fact, reached an agreement is tantamount to an admission that Rockey had actually authorized his attorney to enter into such an agreement. Second, I do not believe that Schorpp's statement in his letter of June 12, 1995 that "Mr. Rockey has reluctantly agreed ...," (R.R. at 121a), in and of itself, provides competent proof that Rockey had actually authorized Schorpp to settle the matter on his behalf. Finally, and most importantly, even if either Rockey's admission or Schorpp's letter provides evidence of authority, such evidence is, at best, evidence of *implied* authority. As the School District itself repeatedly acknowledges, these statements merely carry the "implication" that Schorpp had Rockey's actual authority to settle this matter. However, the authority of

---

3. The School District makes much of the fact that Rockey allegedly "never refuted, disavowed or otherwise disputed Attorney Schorpp's authority," (School District's brief at 16), either in his answer to the School District's petition or at the hearing. The School District concludes that this "absence of evidence ... on the matter of Attorney Schorpp's authority ... is tantamount to a full admission that such authority existed." (School District's brief at 17.) However, the School District's argument misplaces the burden of proof.

Although it is true that Rockey never denied Schorpp's authority to accept a settlement on his behalf either in his answer to the School District's petition or at the hearing, it was not Rockey's burden to *dis*prove, but, rather, the School District's burden to *prove*, that Schorpp had the actual authority to enter into a binding agreement with the School District. The School District could have *satisfied its* burden in either of two ways: (1) it could have pleaded and introduced evidence that Rockey had actually authorized Schorpp's acceptance of settlement; or (2)

it could have pleaded and introduced evidence that Rockey had ratified Schorpp's *un*authorized acceptance of settlement. *See Yarnall v. Yorkshire Worsted Mills*, 370 Pa. 93, 87 A.2d 192 (1952)(noting that, where client fails to promptly repudiate act of attorney upon receiving knowledge that attorney has exceeded his or her authority, client will be held to have ratified unauthorized act of attorney). Because the School District never pleaded or introduced any such evidence, Rockey was under no burden to deny or dispute Schorpp's authority. Moreover, even if the School District had introduced such evidence, by refusing to sign a written release, Rockey promptly and sufficiently repudiated Schorpp's acceptance of a settlement with the School District. *Compare Gross v. Penn Mutual Life Insurance Co.*, 396 F.Supp. 373 (E.D.Pa.1975)(holding that, where client has signed written document authorizing attorney to accept settlement agreement on his or her behalf, failure to sign final release does not prevent agreement from becoming binding).

an attorney to bind his or her client by way of agreement or compromise cannot be inferred, but must be proven. *L & A Creative Art Studio.* Because the School District provided no evidence in support of its burden other than that which it urges this court to infer from the agreement itself,[4] I believe that the School District has failed to satisfy its burden of proving that Schorpp had the actual authority to bind his client to the terms of an agreement which compromised his client's substantial rights.

Accordingly, I would affirm the trial court's order denying the School District's petition to effect settlement of just compensation.

COLINS, President Judge, joins in this dissent.

---

4. It is interesting to note that the School District never called either Rockey or Schorpp as a witness at the hearing before the trial court. (Trial ct. op. at 3.)