J-A23035-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JAMIE FABIAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THE PENNSYLVANIA STATE | : | No. 369 WDA 2025 |
| UNIVERSITY | : | |

Appeal from the Order Entered February 28, 2025
In the Court of Common Pleas of Blair County Civil Division at No(s):
2023 GN 478

BEFORE:  PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:             **FILED: January 30, 2026**

Jamie Fabian ("Appellant") appeals from the order entered on February 28, 2025, in the Court of Common Pleas of Blair County, which granted The Pennsylvania State University's ("PSU") motion to enforce a settlement agreement.  We affirm.

Appellant initiated this action on February 27, 2023, with the filing of a complaint against PSU.[1]  In her second amended complaint, Appellant alleged that she had been employed by PSU as an adjunct professor and that PSU discharged her in violation of the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.C.S. § 951 *et seq*.  Second Amended Complaint, 1/22/24, at ¶¶ 8, 24-36.  PSU denied that it violated the PHRA in any way.  ***See*** PSU's Brief at 2.

_____

[1] At the time, Appellant was represented by Prabhu Narahari, Esquire.

Subsequently, the parties engaged in settlement negotiations, which the trial court summarized as follows:

> In an email from [Appellant's] then-counsel[, Attorney Narahari,] to defense counsel[,] dated August 6, 2024, [Attorney Narahari] stated as follows: "We accept your offer for [Settlement Amount[2]] in return for a full release of claims, obviously with the written agreement condition." Motion to Enforce [at] Exhibit "A." This acceptance followed a string of negotiating emails[ between the parties' counsel]. On August 23, 2024, defense counsel filed an unopposed motion to stay[,] stating that the parties had reached an agreement and [requesting that] deadlines … be extended to allow the parties [time] to finalize a written agreement. [**Id.** at] Exhibit "B." On September 6, 2024[, defense counsel] provided [Attorney Narahari] a draft of the written settlement agreement. On September 11, 2024, [Attorney Narahari] emailed that the agreement "looks good." [**Id.** at] Exhibit "E."

Trial Court Opinion and Order ("TCOO"), 2/28/25, at 1-2 (cleaned up); **see also id.** at 2 (noting that "[a]t all times during the above history, [Attorney Narahari] was counsel of record" for Appellant).[3]

On October 1, 2024, Attorney Narahari indicated that he needed to adjust the allocation of the settlement amount between himself and Appellant and that he would agree to another motion to stay in order to execute the final agreement. PSU's Brief at 4. Thus, PSU filed a second unopposed motion to stay, stating that "the parties have agreed to the final terms of a written settlement agreement but require more time to execute the agreement." **Id.**

---

[2] PSU notes that the settlement amount has been redacted, due to the confidential nature of the agreement. PSU's Brief at 2.

[3] Appellant stresses that she is **presently** aware that the written settlement negotiations took place; however, she contends that Attorney Narahari did not inform her of these communications at the time. Appellant's Brief at 7.

(cleaned up). Attorney Narahari concurred in the contents of the motion. *Id.* On October 22, 2024, Attorney Narahari again sought to change the allocation of the settlement amount; PSU's counsel promptly provided him with an updated settlement agreement. *Id.* Three days later, on October 25, 2024, Attorney Narahari withdrew as Appellant's counsel, and Appellant's current counsel, Joseph W. Cavrich, Esquire, entered his appearance on her behalf. *Id.* at 4-5.

The trial court conducted a conference call on November 15, 2024, during which Attorney Cavrich indicated that Appellant would not be executing the settlement agreement. TCOO at 2. Consequently, PSU filed a motion to enforce the settlement agreement. *Id.* Therein, it asserted that, although there were delays in the execution of the written settlement agreement due to Attorney Narahari's request for changes to the allocation of the agreed-upon settlement amount, the parties had agreed to the essential terms of the settlement agreement. Motion to Enforce Settlement Agreement, 1/17/25, at ¶¶ 15-16. Notwithstanding, Attorney Cavrich submitted a letter to the trial court on October 24, 2024, stating that he "cannot in good faith or conscience recommend that [Appellant] proceed with settlement at this time." *Id.* at ¶ 19. PSU argued that the case had already been settled, "as the parties agreed to the full and complete terms of a written settlement agreement[,]" *id.* at ¶ 20, and, therefore, requested that the court enforce the settlement agreement and dismiss the case with prejudice, *id.* at ¶ 21.

Appellant opposed PSU's motion, "asserting that she was fraudulently induced into agreeing to the terms of the settlement agreement, due to a lack of communication with her former attorney, and her former attorney's attempt to cover up his professional negligence." Appellant's Brief at 6. More specifically, Appellant alleged that, "[a]s a general practice, Attorney Narahari and his staff shared little to no information with [her] about legal filings in this lawsuit, or documents related to settlement discussions between Attorney Narahari and [PSU's] counsel." Response to Motion to Enforce Settlement, 2/18/25, at ¶ 7; *see also id.* at ¶ 1 (asserting that Appellant was never sent, nor did she ever review, a draft of the first or second amended complaints prior to the pleadings being filed; that she never signed the verifications for the first or second amended complaints; and that she believes Attorney Narahari "affixed [Appellant's] photocopied signature to the verifications … in an intentional effort to hide the fact that [Appellant's] pleadings were defective"); *id.* at ¶ 13 (stating that Attorney Narahari failed to inform Appellant regarding the consequences of signing the proposed settlement agreement). As such, Appellant argued that Attorney Narahari and his law firm violated multiple Pennsylvania Rules of Professional Conduct. *See id.* at ¶ 13 (citing Pa.R.P.C. 1.1, 1.3, 1.4(a)(1)-(4), 1.4(b), 8.4(c)).

Additionally, Appellant averred that the reason her second amended complaint only alleged state law discrimination claims against PSU, *i.e.*, PHRA claims, is because Attorney Narahari failed to file a timely lawsuit asserting discrimination claims available to Appellant under federal law within ninety

days of Attorney Narahari's having received a Notice of Right-to-Sue from the Equal Employment Opportunity Commission ("EEOC"). *Id.* at ¶ 1; *see also id.* at ¶ 13(b) ("The filing of a federal lawsuit would have also preserved [Appellant's] right to a jury trial in the instant action[.]"); *id.* at ¶ 13(h) ("Attorney Narahari … never advised [Appellant] that the reason a non-jury trial had been scheduled was because Attorney Narahari failed to file a timely lawsuit after receiving a Notice of Right-to-Sue from the EEOC, and that he had only preserved [Appellant's] state law discrimination claims under the [PHRA]."). Thus, Appellant stated that, throughout his representation of her in this case, Attorney Narahari "failed to demonstrate even the most rudimentary understanding of practice and procedure before the P[ennsylvania] Human Relations Commission ('PHRC'), the [EEOC], and [of] the Pennsylvania Rules of Civil Procedure." *Id.* at ¶ 13.

Based on the foregoing allegations, Appellant indicated that, on January 27, 2025, she commenced a lawsuit against Attorney Narahari with the filing of a praecipe for writ of summons in the Court of Common Pleas of Blair County at No. 2025-0022. *Id.*; *see also id.* (noting that the complaint "will sound in professional negligence"). Appellant stated that she "intends to vigorously pursue her professional negligence claim against Attorney Narahari and his law firm." *Id.* In doing so, she claims that she "will be able to satisfy all of the elements for legal malpractice — namely: the employment of the attorney or other basis for duty; the failure of the attorney to exercise ordinary

skill and knowledge; and that such negligence was the proximate cause of damage to the plaintiff." ***Id.*** (internal quotation marks and citations omitted).

On February 28, 2025, the trial court held a hearing on the motion to enforce the settlement agreement, "at which, [Attorney Cavrich] stated that there was no dispute of fact in this case as presented by defense counsel." TCOO at 2. Later that same day, the trial court issued an opinion and order granting PSU's Motion to Enforce Settlement Agreement. ***See generally id.*** at 1-6; ***see also id.*** at 5 ("In sum, [Appellant] agreed to the essential terms of settlement and [Attorney Narahari] conveyed her acceptance of [*sic*] [PSU]. Whether that acceptance was due to malpractice may be the subject of a malpractice claim, but it does not vitiate the settlement.").

Appellant timely appealed.[4] On March 31, 2025, the trial court filed a Rule 1925(a) opinion incorporating its February 28, 2025 opinion and order. Appellant now presents the following questions for our review:

I. Whether the lower court abused its discretion and commit [*sic*] errors of law in holding that the Settlement Agreement negotiated by Appellant's former attorney was enforceable, as Appellant was fraudulently induced by her former attorney to agree to settle due to her former attorney's professional negligence[?]

II. Whether the lower court abused its discretion and commit [*sic*] an error of law in holding that Appellant's sole remedy for her former attorney's professional negligence was to pursue a separate lawsuit against her former attorney[?]

Appellant's Brief at 4 (paragraph numbering added).

---

[4] The trial court did not direct Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

In considering the merits of Appellant's claims, we are mindful of the following:

> The enforceability of settlement agreements is determined according to principles of contract law. Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary[,] as the appellate court may review the entire record in making its decision. … With respect to factual conclusions, we may reverse the trial court only if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

*Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 517-18 (Pa. Super. 2009) (internal brackets and citations omitted). "The prevailing party is entitled to have the evidence viewed in the light most favorable to its position." *King v. Driscoll*, 296 A.3d 1178, 1184 (Pa. Super. 2023) (citation omitted).

"Like any contract, to be enforceable, a settlement agreement must possess all the elements of a valid contract: offer, acceptance, and consideration." *Toppy v. Passage Bio, Inc.*, 285 A.3d 672, 682 (Pa. Super. 2022) (citation omitted). Moreover, "it is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon all the terms, as well as the subject matter of the agreement." *Id.* (citation omitted); *see also Schreiber v. Olan Mills*, 627 A.2d 806, 808 (Pa. Super. 1993) ("[F]or an agreement to exist, there must be a 'meeting of the minds,'…; the very essence of an agreement is that the parties mutually agree to the same thing…."). "Where a settlement agreement contains all of the requisites for a

valid contract, a court must enforce the terms of the agreement." ***Mastroni-Mucker***, 976 A.2d at 518; ***see also Toppy***, 285 A.3d at 682 ("[I]f the parties have agreed on the essential terms, the contract is enforceable even though it is an informal memorandum requiring future approval or negotiations of incidental terms.").

In the case *sub judice*, Appellant's first issue questions whether the trial court erred in enforcing the settlement agreement, as she claims she was "**fraudulently induced** by [Attorney Narahari] to agree to settle…." Appellant's Brief at 4 (emphasis added). However, the corresponding heading in the argument section of her brief does not mention fraudulent inducement.[5] Rather, it avers that the trial court erred in holding that the settlement agreement is enforceable, because "Appellant **did not give knowing consent** to settle…." *Id.* at 15 (cleaned up; emphasis added). ***See*** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed—the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.").

In the body of her argument, Appellant discusses at length the professional negligence claim that she intends to file and "vigorously pursue"

---

[5] 'Fraud in the inducement' of a contract is where "an opposing party made false representations that induced the complaining party to agree to the contract." ***Toy v. Metro. Life Ins. Co.***, 928 A.2d 186, 205 (Pa. 2007).

against Attorney Narahari. **See** Appellant's Brief at 16-19; **see also id.** at 17-18 (listing the numerous Pennsylvania Rules of Professional Conduct that Attorney Narahari allegedly violated while representing her in this matter); **id.** at 18 (stating that, in pursuing her professional negligence claim against Attorney Narahari, "she will be able to satisfy all of the elements for legal malpractice"). She asserts that "Attorney Narahari failed to possess and exercise that degree of knowledge, skill and care which would normally be exercised by members of the profession under the same or similar circumstances." **Id.** at 18 (citing **McPeake v. Cannon, Esquire, P.C.**, 553 A.2d 439, 441 (Pa. Super. 1989)). She also contends that Attorney Narahari failed to inform her of the consequences of her agreeing to the settlement. **Id.** at 19. "In essence," Appellant proclaims that she "will establish that she was fraudulently induced by Attorney Narahari and his law firm into agreeing upon a settlement in this case." **Id.**

Appellant fails, however, to set forth the elements of fraud in the inducement. Nor does she engage in any discussion of the law regarding fraudulent inducement and/or explain precisely how Attorney Narahari fraudulently induced her to settle with PSU. **See Rudy v. Lesniak**, 343 A.3d 1261, 1267 (Pa. Super. 2025) (noting that Pennsylvania law requires fraud of any kind to be plead with particularity). It is not the job of this Court to develop arguments for the appellant. Thus, we deem Appellant's claim pertaining to fraudulent inducement waived. **See Banfield v. Cortes**, 110 A.3d 155, 168 n.11 (Pa. 2015) ("Where an appellate brief fails to provide any

discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate an appellant's arguments for him.") (cleaned up).

To the extent that Appellant suggests the settlement agreement is unenforceable because there was no meeting of the minds, **see** Appellant's Brief at 13 ("It is inconceivable that Appellant could have effectively participated in the settlement negotiations between Attorney Narahari and counsel for [PSU], as Attorney Narahari did not meaningfully advise Appellant of those communications."); **id.** at 14 ("It is inconceivable that [Appellant] knowingly consented to settlement, or that there could have been a meeting of minds on the settlement amount given the circumstances at hand."), we also deem this claim waived due to Appellant's failure to include this issue in her Statement of Questions Involved. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **Wirth v. Com**., 95 A.3d 822, 858 (Pa. 2014) ("[Rule 2116(a)] is to be considered in the highest degree mandatory, admitting of no exception; ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby.").

Notwithstanding waiver, we would determine that Appellant's claim that the trial court erred in enforcing the settlement agreement is meritless. As the trial court opined:

It is clear that a settlement has been agreed to in this case as reflected in the August 6, 2024 email from [Attorney Narahari,] which stated…, "we **accept** your **offer** for $[Settlement Amount] **in return for** a full release of claims, obviously with the written agreement condition." The only "condition" in the acceptance was for the settlement to be reduced to writing, which was done, and to which [Attorney Narahari] stated[,] "looks good[."] The essential terms of the settlement are all specifically laid out in the settlement agreement.

TCOO at 4 (cleaned up; emphasis added); *see also Toppy*, 285 A.3d at 682 (requiring an offer, acceptance, and consideration for a settlement agreement to be enforceable); *Mastroni-Mucker*, 976 A.2d at 518 ("There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating the lawsuit, the defendant will pay the plaintiff the agreed upon sum).").

Moreover, we would conclude that the record demonstrates a meeting of the minds as to all essential terms of the settlement agreement. *See Schreiber*, 627 A.2d at 808 ("For an agreement to exist, there must be a 'meeting of the minds[]'…."). Attorney Narahari expressly stated in his August 6, 2024 email to PSU's counsel, "we accept your offer for $[Settlement Amount] in return for a full release of claims…." *See* TCOO at 4 (internal brackets omitted). Additionally, the parties notified the trial court that they had agreed to the final terms of a written settlement agreement, but that they simply needed more time to execute the agreement. *See* Second Unopposed Motion to Stay, 10/1/24, at ¶ 3. *See Gasbarre Products, Inc. v. Smith*, 270 A.3d 1209, 1218 (Pa. Super. 2022) ("Because a court is constrained to construe the parties' contract based on the parties' outward and objective

- 11 -

actions — particularly, the plain terms of their written agreement — a subjective, or 'true and actual,' meeting of the minds is not necessary for an enforceable contract to form.") (emphasis omitted).

PSU also convincingly argues that there is a presumption that a settlement entered into by an attorney has been authorized by the client, and that Appellant has failed to rebut this presumption. **See** PSU's Brief at 8-9 (citing **Rockey v. Big Spring Sch. Dist.**, 699 A.2d 1331, 1334 (Pa. Cmwlth. 1997) ("There is a presumption that a settlement entered into by an attorney has been authorized by the client, although rebuttal of the presumption will render the purported settlement ineffective."));[6, 7] **see also King**, 296 A.3d

_____

[6] We recognize that "a decision of the Commonwealth Court is not binding precedent upon this Court; however, it may be considered for its persuasive value." **Holland ex rel. Holland v. Marcy**, 817 A.2d 1082, 1083 n.1 (Pa. Super. 2002) (citation omitted).

[7] As our sister court explained:

> This presumption is fundamental to the effective functioning of our adversary system[,] which is grounded, in part, upon two interrelated understandings: (1) that attorneys speak for their clients, both to the court and to opposing counsel, and (2) that attorney-client communications are privileged. Being able to rely upon counsel's representations of their clients' positions serves the salutary purpose of avoiding intrusion into the attorney-client relationship. Of course, there will be occasional situations where an attorney, by mistake or otherwise, will misrepresent a client's position. This can easily be determined and addressed by a fact-finding exercise, **once the client has come forward to deny the attorney's representations**. Otherwise, no inquiry into the conversations or understandings between clients and their counsel is warranted. Clearly, any diminution of the presumption that the attorney speaks for the client would have a tendency to prompt

*(Footnote Continued Next Page)*

at 1184 ("The law in this jurisdiction is clear and well-settled that an attorney must have express authority in order to bind a client to a settlement agreement.") (citation omitted). In fact, PSU notes that Appellant acknowledges that she agreed to the settlement. PSU's Brief at 9-10. We would discern that this argument is supported by the record. *See* Appellant's Brief at 13 ("[Appellant] detrimentally relied upon her attorney[']s advice and counsel **in agreeing to a settlement**….") (emphasis added); *id.* at 19 (stating that "Appellant will establish that she was fraudulently induced … into **agreeing upon a settlement**") (emphasis added); *id.* (noting that "Appellant is not alleging an inadequacy of the settlement" negotiated by Attorney Narahari, but rather that she was given "bad advice" about agreeing to the settlement).

Because the trial court found that all the essential elements of a valid contract were present and that Appellant herself agreed to the settlement, but that she believed she was fraudulently induced to do so, it next considered whether Appellant had demonstrated fraud by clear, precise, and convincing evidence. *See* TCOO at 4. The trial court concluded that she had not. *Id.* For the following reasons, we would agree that Appellant failed to meet her burden in establishing a claim for fraud.

---

such intrusion as a matter of course to "verify" uncontroverted statements before they are relied upon.

*Rockey*, 699 A.2d at 1334 (emphasis in original).

"A party wishing to invalidate a contract must show fraud or mutual mistake by clear, precise[,] and convincing evidence." *Baribault v. Zoning Hearing Bd. of Haverford Twp.*, 236 A.3d 112, 118 (Pa. Cmwlth. 2020) (internal quotation marks and citation omitted); *see also Leyda v. Norelli*, 564 A.2d 244, 245 (Pa. Super. 1989) (recognizing that "fraud and mistake are bases for setting aside a settlement agreement"). To establish fraud, a party must plead each of the following elements with particularity:

> (1) A representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Rudy*, 343 A.3d at 1267 (quoting *Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994)); *see also id.* (explaining that the six elements of fraud apply to claims of fraud in the inducement) (citation omitted).

> Regarding the particularity requirement, we have explained:
>
> While it is impossible to establish precisely what degree of particularity is required to sufficiently allege fraud, it is well-settled that the following two conditions must always be met: "The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense[,] and they must be sufficient to convince the court that the averments are not merely subterfuge." *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 544-45 (Pa. Super. 2005).

*Id.* at 1267-68. "[A]t the very least[,] a plaintiff must set forth the exact statement or actions [the] plaintiff alleges constitute the fraudulent

- 14 -

misrepresentations." ***Youndt***, 868 A.2d at 545 (internal quotation marks and citation omitted).

Here, the trial court determined that "fraud has not been demonstrated or pled." TCOO at 5; ***see also id.*** (noting that "the [c]losest [Appellant] gets to alleging a fraudulent representation is the allegation that her former attorney provided her 'half-truths'"). The trial court acknowledged that Appellant's allegations may form the basis of a malpractice claim against her former counsel, stating: "Indeed, [Appellant] argues that she can make out a case for legal malpractice and sets forth the elements of a legal malpractice claim." ***Id.*** However, it observed: "No such exposition is made with regard to a fraud claim." ***Id.*** In sum, the trial court concluded that Appellant agreed to the essential terms of the settlement and that her attorney at the time conveyed her acceptance to PSU. ***Id.*** "Whether that acceptance was due to malpractice may be the subject of a malpractice claim, but it does not vitiate the settlement." ***Id.*** We would discern no error of law or abuse of discretion in the trial court's decision to enforce the settlement agreement.

Finally, Appellant alleges that the trial court erred in holding that her sole remedy for Attorney Narahari's alleged professional negligence is to pursue a separate malpractice lawsuit against him. ***See*** Appellant's Brief at 20. However, Appellant does not cite any legal authority whatsoever in support of her claim or engage in any meaningful discussion of the law. She merely reiterates her argument that the trial court should not have enforced the settlement agreement due to Attorney Narahari's alleged malpractice and

his withholding critical information from her, suggesting that the trial court "had other options." *Id.* at 20-21; *see also id.* at 21 (stating that the trial court could have denied PSU's motion to enforce the settlement agreement and allowed the underlying case to proceed; stayed the underlying litigation and given Appellant the opportunity to pursue her professional negligence claim against Attorney Narahari; or issued a rule to show cause why the settlement agreement should not have been enforced). Because Appellant fails to properly develop this argument, we deem this issue waived. *See Umbelina v. Adams*, 34 A.3d 151, 161 (Pa. Super. 2011) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

Accordingly, we affirm the trial court's February 28, 2025 order granting PSU's motion to enforce the settlement agreement.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

1/30/2026